IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

RONALD HUTCHESON                                                    PLAINTIFF

           v.                      Civil No. 08-5002

SHERIFF KEITH FERGUSON; and
DEPUTY STEVE METHENEY                                              DEFENDANTS

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Ronald Hutcheson (hereinafter Hutcheson), brings this *pro se* civil rights action

pursuant to 42 U.S.C. § 1983.  Hutcheson contends his constitutional rights were violated when

he was arrested and charged with simultaneous possession of a firearm and drugs, possession

with intent to sell, and communicating a false report.

Defendants filed a motion for summary judgment (Doc. 19).  To assist plaintiff in

responding to the summary judgment motion, I entered an order (Doc. 23), directing Hutcheson

to complete, sign, and return an attached questionnaire that would serve as his response to the

summary judgment motion.  Hutcheson filed a timely response to the court's questionnaire (Doc.

24).  The case is currently before the undersigned for the issuance of a report and

recommendation on the summary judgment motion.

### I. BACKGROUND

Hutcheson was arrested on January 5, 2006, at 6:30 p.m.  *Resp.* at ¶ 1.  He was booked

into the Benton County Detention Center (BCDC) at 8:27 p.m.  *Id.* at ¶ 2.  He bonded out of the

BCDC on January 18, 2006.  *Id.* at ¶ 3.

On January 5, 2006, at approximately 5:31 p.m., Deputy Steve Metheney of the Benton

County Sheriff's Office was dispatched to 12926 Bryant Way for a disturbance with shots fired.

-1-

*Resp.* at ¶ 4.   On the way to the address, Metheney was advised by dispatch that a man, later identified as Hutcheson, was locked in a bathroom. *Id.* at ¶ 5.   Metheney was also advised that he had told them a woman had shot a 38 caliber handgun at him. *Id.*

Hutcheson had placed the call to the Benton County Sheriff's Office. *Resp.* at ¶ 6.   He indicates Bonnie Davis had pulled a pistol on him and threatened him with it. *Id.*   He thought she was going to shoot him with it so this was the reason he reported shots fired. *Id.*   He placed the call at about 5:30 p.m. *Id.*

Hutcheson was living at 12926 Bryant Way in Rogers, Arkansas. *Resp.* at ¶ 7.   He had been living there about four weeks. *Id.*

Deputy Powell and Metheney responded to the call. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) 2 at page 1; *Resp.* at ¶ 8 (without knowledge to agree or disagree).   Powell arrived first and the female was outside the home. *Id.*   He advised Metheney to slow his response because everything was okay. *Id.*

Metheney arrived a few minutes later. *Resp.* at ¶ 9.   Sgt. Conner also arrived to assist. *Id.*   Conner advised Metheney on the radio that a man had gone out the back door. *Id.*

Metheney located the man on Bryant Lane and he was identified as Randy Giles. *Defts' Ex.* 2 at page 1.   He stated he lived at 12926 Bryant Way but was not involved in the disturbance. *Id.*   According to Hutcheson, Giles was involved in the altercation with the gun. *Resp.* at ¶ 10. Additionally, Hutcheson maintains Giles is a known methamphetamine cook and had done prison time for it. *Id.*

Metheney did not know what was going on so he placed Giles in cuffs and transported him back to 12926 Bryant Way. *Resp.* at ¶ 11.   When Metheney arrived at 12926 Bryant Way,

-2-

Powell had arrested Bonnie Davis, the female accused of shooting the gun. *Defts' Ex.* 2 at page 1. Hutcheson states that Metheney talked to Davis for about forty-five minutes and never said a word to him. *Resp.* at ¶ 12. He states Davis was not arrested until after he was arrested and taken from the house. *Id.*

Powell had not found the gun but had found a large amount of Marijuana. *Resp.* at ¶ 13. Davis signed a consent to search her residence and a Miranda Warning Form. *Id.* at ¶ 14. Davis lived at 12926 Bryant Way. *Id.* at ¶ 15. She was advised she could withdraw consent at anytime and Powell stayed with her to relay that message if she chose to stop consent. *Defts' Ex.* 2 at page 2.

Metheney went inside the residence where he heard Hutcheson tell Conner that the drugs were Bonnie's. *Resp.* at ¶ 17. Conner advised Metheney that the Criminal Investigation Division (CID) was en route to process the scene. *Id.* at ¶ 18. Metheney asked if the gun had been located and Conner said it had not. *Defts' Ex.* 2 at page 2.

Conner took Metheney into the master bedroom, located at the north east portion of the residence, and showed him the bathroom floor where the drugs were located. *Defts' Ex.* 2 at page 2; *Resp.* at ¶ 20 (without knowledge to agree or disagree). Metheney observed a purple see through backpack with what appeared to be a large zip lock bag containing Marijuana. *Defts' Ex.* 2 at page 2; *Resp.* at ¶ 21(without knowledge to agree or disagree).

Metheney looked into a large piece of bedroom furniture located next to the bathroom for the gun. *Defts' Ex.* 2 at page 2; *Resp.* at ¶ 22 (without knowledge to agree or disagree). The doors were open and he could see several boxes of 38 caliber ammunition. *Id.*

Metheney opened a clear baggy containing the ammunition and located a hammer-less 38 caliber hand gun. *Defts' Ex.* 2 at page 2; *Resp.* at ¶ 23 (without knowledge to agree or disagree). It was wrapped in a plastic baggy and unloaded. *Id.* He did not smell any gun powder residue on it. *Id.*

Powell and Metheney asked Hutcheson why he told dispatch a shot was fired and he stated because he wanted them to get there faster. *Resp.* at ¶ 24. He was arrested for communicating a false report and placed in a patrol car. *Id.* at ¶ 25. He also admitted to taking the drugs into the bathroom to hold for the officers. *Id.* at ¶ 26. Hutcheson was transported to jail and charged with simultaneous possession of a firearm and drugs, possession with intent to sell, and communicating a false report. *Id.* at ¶ 27.

Metheney brought Davis inside the residence and asked her to complete a written statement. *Defts' Ex.* 2 at page 3; *Resp.* at ¶ 28 (without knowledge to agree or disagree). CID Investigators Newell and Rogers arrived and Metheney showed them where the marijuana was found. *Defts' Ex.* 2 at page 3; *Resp.* at ¶ 29 (without knowledge to agree or disagree). Metheney also gave them a brief description of what had occurred and turned the scene over to them. *Id.*

The marijuana had a gross weight of 1.15 pounds. *Resp.* at ¶ 30. Metheney stayed with Davis while CID conducted a search and gathered evidence. *Defts' Ex.* 2 at page 3; *Resp.* at ¶ 31 (without knowledge to agree or disagree). Davis never withdrew her consent to search. *Id.*

Davis stated she did not know where all the drugs came from. *Defts' Ex.* 2 at page 3; *Resp.* at ¶ 32 (without knowledge to agree or disagree). She indicated she only kept 1/4 ounce of Marijuana for herself. *Id.* She indicated she smoked it to relieve pain. *Id.*

-4-

Davis was Hutcheson's girlfriend. *Resp.* at ¶¶ 33-34. However, because of "her dope dealing life style he was moving out." *Id.* Giles had moved in and according to Hutcheson was dealing drugs. *Resp.* at ¶ 35. Hutcheson maintains he had given Detective Ray Giles' vehicle license plate number. *Id.*

Metheney did not find enough evidence for domestic violence charges against Hutcheson or Davis. *Resp.* at ¶ 36. Davis admitted the gun was hers. *Id.* at ¶ 37.

According to Metheney, Hutcheson was found in close proximity to the gun, both he and Davis had access to the gun and drugs, they lived together, and they admitted to smoking Marijuana. *Defts' Ex.* 2 at page 4. Hutcheson, however, states he was often drug tested for Department of Transportation (DOT) purposes. *Resp.* at ¶ 38. While he does drink some, he states he does not do illegal drugs. *Id.* He states he had just passed a drug test. *Id.*

After CID was done with the investigation, Davis was transported to jail and charged with simultaneous possession of a firearm and drugs and possession with intent to sell. *Defts' Ex.* 2 at page 4; *Resp.* at ¶ 39 (without knowledge to agree or disagree). While en route to the jail, Metheney asked dispatch to make a copy of the 911 call. *Defts' Ex.* 2 at page 4; *Resp.* at ¶ 40 (without knowledge to agree or disagree).

The prosecuting attorney did not file the communicating a false police report charge against Hutcheson. *Resp.* at ¶ 41. Probable cause was found to exist for the other charges against Hutcheson. *Id.* These charges were dismissed on July 10, 2007. *Id.*

Prior to January 5, 2006, Hutcheson asserts he was providing information to Detective Ray of the Rogers Police Department. *Resp.* at ¶ 43. Hutcheson first provided information to Ray on January 1, 2006. *Id.* The information Hutcheson provided was about Davis dealing five

AO72A
(Rev. 8/82)

pounds or more of Marijuana. *Id.* Hutcheson also states he also provided information about Randy Giles and stated that he was going to be cooking somewhere. *Id.* Hutcheson states Ray was going to set up a buy or sting to catch Davis. *Id.* Davis was convicted of the crimes she was charged with on January 5, 2006. *Resp.* at ¶ 44.

Hutcheson states he spoke with Sheriff Ferguson when he came to Hutcheson's cell. *Resp.* at ¶ 46. He indicates he told Sheriff Ferguson what happened and he couldn't believe it. *Id.*

Hutcheson maintains Benton County has a policy that if you have been arrested before you must be guilty now. *Resp.* at ¶ 47. Since he had a prior record, Hutcheson states they automatically believed he was guilty. *Id.*

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing*

-6-

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

"A case founded on speculation or suspicion is insufficient to survive a motion for summary

judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### III. DISCUSSION

Defendants have moved for summary judgment. They contend Hutcheson's false arrest

and wrongful detention claims fail as a matter of law because he was lawfully arrested and

detained. Finally, they contend Hutcheson's defamation claim does not state a claim of

constitutional dimension.

In *Baker v. McCollan*, 443 U.S. 137, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979), the

Supreme Court stated:

> The Constitution does not guarantee that only the guilty will be arrested. If it did,
> § 1983 would provide a cause of action for every defendant acquitted-indeed, for
> every suspect released. Nor are the manifold procedural protections afforded
> criminal defendants under the Bill of Rights "without limits." *Patterson v. New
> York*, 432 U.S. 197, 208, 97 S.Ct. 2319, 2326, 53 L.Ed.2d 281 (1977). "Due
> process does not require that every conceivable step be taken, at whatever cost,
> to eliminate the possibility of convicting an innocent person." *Ibid.*
>
> The Fourteenth Amendment does not protect against all deprivations of liberty.
> It protects only against deprivations of liberty accomplished "without due process
> of law." A reasonable division of functions between law enforcement officers,
> committing magistrates, and judicial officers-all of whom may be potential
> defendants in a § 1983 action-is entirely consistent with "due process of law."

*Baker*, 443 U.S. at 145-46.

"Probable cause exists if the totality of the facts based on reasonably trustworthy

information would justify a prudent person in believing the individual arrested had committed

. . . an offense." *Flynn v. Brown*, 395 F.3d 842, 844 (8th Cir. 2005)(internal quotation marks and

citations omitted). "[D]etermining if probable cause exists is not an exact science," *Brodnicki

v. City of Omaha*, 73 F.3d 1261, 1265 (8th Cir. 1996), however, viewing the facts as a whole at

AO72A
(Rev. 8/82)

the time of Hutcheson's arrest, we believe a prudent person would have been justified in believing Hutcheson had committed the offenses of simultaneous possession of a firearm and drugs, possession of a controlled substance with intent to sell, and communicating a false report. There is no evidence of a Fourth Amendment violation. *Sheets v. Butera*, 389 F.3d 772, 778 (8th Cir. 2004). *See also Anderson v. Larson*, 327 F.3d 762, 770 (8th Cir. 2003)(A claim of false arrest brought pursuant to § 1983 fails if the officer had probable cause to make the arrest); *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001)("[A] false arrest claim under § 1983 fails as a matter of law where the officer had probable cause to make the arrest. Since the record adequately support the conclusion that the police officers had probable cause to arrest Kurtz for tampering, plaintiffs' allegations of false arrest fail to establish a civil rights violation.").

Furthermore, Hutcheson does not deny that proper procedures were utilized to arrest him, book him into the detention center, and to file criminal charges against him. Rather, he merely claims he was innocent of the charges and was able to ultimately prevail and have all charges against him dismissed. We conclude Hutcheson has stated no claim that his rights under the Due Process Clause have been violated.

Next, the "Constitution does not mention malicious prosecution nor do[es Hutcheson] cite a basis for a federal action for malicious prosecution." *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001). The Eighth Circuit has "uniformly held that malicious prosecution by itself is not punishable under § 1983 because it does not allege a constitutional injury." *Id.*

Finally, to the extent Hutcheson seeks to assert a defamation claim, that claim also fails. "[D]efamation, per se, is not actionable under section 1983." *Underwood v. Pritchard*, 638 F.2d 60, 62 (8th Cir. 1981). *See also Wade v. Goodwin*, 843 F.2d 1150, 1152 (8th Cir. 1988)(A cause

AO72A
(Rev. 8/82)

of action for damage to character or reputation is not cognizable under § 1983).  The Supreme Court has held that a person's interest in his reputation is not considered liberty or property protected by the Due Process Clause.  *Paul v. Davis*, 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976).  Thus, "regardless of whom a plaintiff chooses to sue, section 1983 does not address an alleged injury to reputation." *Idema v. Wager*, 120 F. Supp. 2d 361, 371 (S.D.N.Y. 2000), *aff'd* 29 Fed. Appx. 676 (2d Cir. 2002).

## IV.  CONCLUSION

I therefore recommend that the motion for summary judgment (Doc. 19) be granted and this case dismissed with prejudice.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 14th day of July 2009.

/s/ *J. Marschewski*

HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)